**FILED & ENTERED**

**AUG 12 2016**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
| Ronald David Truppa, Jr | Case No.: 1:15-bk-11029-MT<br>Adv No:   1:15-ap-01103-MT |
| Debtor(s). | |
| Tifanie Joudeh | **MEMORANDUM OF DECISION GRANTING MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff(s), | |
| v. | |
| Ronald David Truppa, Jr., David Seror, not individually but solely in his capacity as Chapter 7 Trustee, | Date:    August 10, 2016<br>Time:    1:00 p.m.<br>Courtroom:   302 |
| Defendant(s). | |

    On or about June 2013, and continuing through August 8, 2013, Plaintiff Tifanie Joudeh ("Plaintiff") alleges that she and Debtor-Defendant Ronald Truppa ("Debtor" or "Defendant") began discussions about becoming partners in a newly formed event that was to be called the Catalina Film and TV Summit ("CFVTS"). Second Amended Complaint (the "SAC"). 3:2-5. CFVTS was to host two days of panels related to educating registrants and attendees about film finance, agency and talent representation, producing, distribution and other related topics, as

-1-

well as "pitch sessions" for registrants to pitch industry executives their own projects. Id. at 3:5-9. CFVTS's dates were to immediately precede the Santa Catalina Film Festival ("SCFF"), in which Debtor was also involved. Id. at 3:10.

Plaintiff alleges that Debtor represented to her that, in exchange for her (1) using her "proprietary contacts" in the film and TV industry (the "Industry") to persuade Industry executives to attend CFVTS; (2) coordinating schedules and transportation of each executive to Catalina Island; (3) preparing panel schedules, topics, and panelists; (4) preparing job descriptions for Summit staff and volunteers; (5) advertising CFVTS to her "proprietary email database of approximately 16,000 people"; and (6) using her time and plan, as Director of CFVTS, for the 2014 and all other future CFVTS. In exchange for all of the services listed above, Plaintiff was to have received (A) 20% ownership of the company that owned CFVTS; (B) 15% of all net profits of CFVTS; (C) co-management of CFVTS; (D) term of five years plus a two-year tail; (E) the title and position of CFVTS Director; and (F) a percentage/commission of any sponsorship funds raised for CFVTS until CFVTS was able to afford providing Plaintiff with a salary. Id. at 3:11-23. In these discussions, Plaintiff alleges that Debtor assured her that SCFF could not be a partner or owner in CFVTS because it was a not for profit organization. Id. at 3:24-25.

Plaintiff alleges that, in reliance on Debtor's representations, she and Debtor entered in to an oral agreement under the terms described above (the "Agreement"). Id. at 3:26-27. Plaintiff alleges that she performed her duties under the Agreement and the first CFVTS was held on or about September 18 and 19, 2013. Id. at 4:12. Plaintiff also continued to work on a plan for CFVTS for 2014, as was allegedly contemplated by the Agreement. Id. at 4:13-14.

Plaintiff alleges that, despite her full performance under the Agreement, Plaintiff refused to provide her with (A) 20% ownership of the company that owned CFVTS; (B) 15% of all net profits of CFVTS; (C) co-management of CFVTS; (D) term of five years plus a two-year tail; (E) the title and position of Summit Director; and (F) a percentage/commission of any sponsorship funds raised for CFVTS. Id. at 4:16-20. Instead, Plaintiff alleges that Debtor moved ahead with the 2014 Summit, intentionally excluding Plaintiff from the entire process. Id. at 4:21-24. Plaintiff alleges that it was planned and intended for SCFF to be a part owner of CFVTS, and that Debtor never intended to perform under the terms of the Agreement, and only made such promises to induce Plaintiff to enter into and perform under the Agreement. Id. at 4:24-27.

On March 26, 2015, Debtor filed a voluntary chapter 7 petition. In his initial schedules,

Debtor did not list Plaintiff as a creditor and did not list any income derived from his work at SCFF or CFVTS. Id. at 5:3-5. Debtor failed to list any interest in CFVTS at all. Id. On April 29, 2015, just over a month after the petition date and after the initial § 341(a) meeting of creditors, Debtor filed amendments to his schedules listing Plaintiff as a creditor. Id. at 5:5-7. Plaintiff alleges that Debtor intentionally waited until after the § 341(a) meeting so that she would not have notice of the meeting and have a shorter time period to object to his discharge. Id.

On June 26, 2015, Plaintiff filed an adversary complaint to determine dischargeability under §§ 523(a)(2)(A) and (a)(6), and to object to Debtor's discharge under § 727(a)(4)(A) (the "Complaint"). Additionally, Plaintiff asserted causes of action against both Debtor and SCFF for fraud, intentional misrepresentation, promissory fraud, and quantum meruit (the "non-bankruptcy causes of action"). On March 1, 2016, after SCFF successfully moved to dismiss the amended complaint under Fed.R.Civ.P. 12(b)(1)[1], Plaintiff filed the SAC, alleging causes of action under §§ 523(a)(2)(A); 523(a)(6); and 727(a)(4)(A). On March 25, 2016, Debtor filed his answer to the SAC. Debtor now moves for summary judgment (the "MSJ").

**Standard**

A.  Standard for Summary Judgment

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432

---

[1] SCFF also successfully moved to dismiss the original complaint under Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. Debtor, however, did not challenge the sufficiency of the complaints as to the allegations made against him.

(9th Cir.1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. Fed R. Civ. P. 56(e). It may not rely on "mere allegations or denials of the adverse party's pleadings." Fed.R.Civ.P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51 (1986). The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. See Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists, does not preclude the use of summary judgment. See Harper v. Wallingform, 877 F.2d 728 (9th Cir.1989); California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U .S. 1006 (1988).

**Discussion**

A.    § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A). The Ninth Circuit has held that a creditor's claim of nondischargeability based on Section 523(a)(2)(A) must satisfy five elements: (1) the debtor made false statement or deceptive conduct; (2) the debtor knew the representation to be false; (3) the debtor made the representation with the intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained damage resulting from its reliance on the debtor's representation. In re Slyman, 234 F.3d 1081, 1085 (9th Cir. 2000).

*a. False statement or deceptive conduct*

Plaintiff alleged in the SAC that Debtor made several misrepresentations as to his "performance under the Agreement." Plaintiff's allegations as to the substance the specific representations are specific: that, in exchange for her input and access to her "proprietary contacts" in the Industry, Debtor was to have, among other things, made her a part owner of CFTVS. SAC, 3:11. Debtor points to an email stream that occurred between him and Plaintiff (among others) between July 2013 and April 2014 to support his claim that they never had a meeting of the minds, that there was no Agreement. Declaration of Ronald Truppa ISO MSJ (the "Truppa Decl."), Ex. 2-6. A careful review of the emails shows that the parties never agreed to the terms repeatedly proposed by Plaintiff.

In support of her opposition, Plaintiff proffered no evidence other than her declaration that Debtor agreed to her terms. The Declaration does not address specific email statements she made where she is clearly still seeking an agreement. Declaration of Tifanie Joudeh ISO Opposition (the "Joudeh Decl.). The Joudeh Declaration is conclusory and never addresses specific evidence submitted by Defendant. In fact, the first instance that Plaintiff's terms in the Agreement are mentioned is in an email dated November 4, 2013, months after the Agreement was allegedly relied on by Plaintiff. Truppa Decl., Ex. 4. Plaintiff did not come forward with copies of emails that would give context and greater clarity to the email exchanges provided by Debtor. Her declaration combined with the emails shows only that attempts were made to reach an agreement. Instead, the bulk of the evidence in support of the opposition centers on Plaintiff's § 727 claim. See Declaration of Michael Lewis ISO Opposition to MSJ (the "Lewis Decl."), Ex. 1-4.

In the email dated July 10, 2013, Plaintiff and Debtor engaged in a responsive exchange where they were ironing out details for the 2013 SCFF "pitch conference," Plaintiff stated only that she didn't want either her or "Steph" to "come out of pocket" for a "Soiree" that Plaintiff appeared to be coordinating. Truppa Decl., Ex. 2. An email from early September 2013 contained an explanation of what Debtor expected from Plaintiff as an "industry executive director" but did not include any return email that may have clarified whether Plaintiff conditioned her participation in the 2013 CTVFS on Debtor's acceptance of the alleged oral Agreement. Id. at Ex. 3.

As stated above, the first mention of some of the terms that Plaintiff alleges were part of the Agreement was in an email dated November 4, 2013. Id. at Ex. 4. Debtor stated in this email that Plaintiff proposed a change in her role in the 2014 event and the arrangement she would expect for her continued participation in the event. In it, Plaintiff states,

> I hope you [Debtor] got a lot out of our dinner last week. It really got my brain going on things to plan!!
>
> Part of the thinking was my overall deal w/ the fest. As I told you, I won't be one of the persons putting out my hand for payment right away. However, I do want to make a deal which considers the fact that I am really providing two totally separate job functions for the organization and address considerations for each. Here are some of the deal points for each job duty that I'd feel comfortable resting my hat on for *my future job functions*. *I must have this deal worked out before the end of the year*. It gives us a bit of time, but not to be ignored till the last minute either :)
>
> […]
>
> These points will get the conversation going, so I can get to writing up the deal shortly thereafter.

Id. (italics added).

While Plaintiff alleged in the SAC that the parties oral Agreement dated back to July 2013, the emails indicate there was still no deal in place as of November 4, 2013. This conclusion is further bolstered by a later email dated March 18, 2014, wherein Plaintiff expresses that she believes that Debtor was perhaps being purposefully obtuse about her proposed terms. Id. at Ex. 5.

> It seems as if the items we discuss (I believe we have an understanding on) is then misconstrued somehow when business deals are communicated back to your advisors. The most clear example is your offer (on our last call) to allow me to take a finders fee on sponsorships I find and them you completely take this deal point off the table. I definitely do not work this way and a bit confused [sic].

Id.

Plaintiff then goes on to recite her "last ditch effort" to finalize the deal, and offered Debtor a "typical and standard" deal point structure" as her "last, best, and final offer. Id.

In an email exchange that occurred over April 1, 2014 and April 2, 2014, the negotiations had broken down between Plaintiff and Debtor. Id. at Ex. 6. In the email to Plaintiff, Debtor stresses that he never agreed to anything and that the only reason that he and Plaintiff "engaged in talks" with "unfinished offers and counter-offers (documented) […] is simply because I like you as a person and wanted to explore those options with you…" Id. Plaintiff's April 2 reply to Debtor's email stated that she was dismayed that Debtor chose to "reject [her] fair offer to meet and discuss the matter." Id.

There is no evidence in the record that the alleged Agreement was ever approved by Defendant. Although Plaintiff alleges that the Agreement was oral, there is no specific evidence of such Agreement, either documented or oral. In opposition to the MSJ, Plaintiff states that, "[Debtor] made a material misrepresentation when he stated that he was entering into the Agreement with Plaintiff and never told her that he denied there was an oral agreement." The documentary evidence provided by Debtor belies her allegation that Debtor committed to the alleged Agreement, whether written or oral. In her own responses, quoted above, Plaintiff acknowledges that the deal had not been finalized. Plaintiff even states in her own declaration that the parties were still "in discussions regarding the terms of the agreement." Joudeh Decl., 3:7-10. It is clear from the communications between the parties that Debtor wanted to work with Plaintiff, but that he was not going to accept the terms proposed by Plaintiff.

Plaintiff further alleged that Debtor misrepresented his intentions for CFTVS to be a non-profit, which omission would have been material to her decision whether or not to perform under the alleged Agreement. Once again, the evidence in support of the MSJ shows that, in her detailed explanations of what she expected in return for her 2014 participation in CTVFS, Plaintiff did not once mention that her proffered terms were based on her understanding that Debtor intended that CTVFS would be a for-profit entity. Even if the terms of any agreement had been shown, there is no evidence of any reliance on this statement or its materiality.

Defendant has satisfied his burden of establishing the absence of a genuine issue of material fact as to § 523(a)(2)(A). Plaintiff has not set forth specific facts and evidence showing that there remains a genuine issue for trial. Fed R. Civ. P. 56(e). Plaintiff merely states that "Defendant never told Plaintiff that [CTVFS] was to be a non-profit" but, as stated above, she did not proffer evidence other than her own declaration that such condition was ever raised. Plaintiff may not rely solely on her vague and conclusory declaration, in which she denies Debtor's characterization of the negotiations, where Debtor has come forward with detailed evidence to

the contrary. Fed.R.Civ.P. 56(e); see also Kung v. FOM Investment Corp., 563 F.2d 1316 (9th Cir. 1977) (holding that conclusory allegations, unsupported by factual data, do not create a triable issue of fact). Debtor is entitled to summary judgment on the § 523(a)(2)(A) claim.

B.    § 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The malicious injury requirement is separate from the willful injury requirement. Carrillo v. Su (In re Su), 290 F.3d 1140, 1146-47 (9th Cir. 2002). A "willful" injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original). "A 'malicious' injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" Su, 290 F.3d at 1146-47 (quoting Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1209 (9th Cir. 2001)).

Although § 523(a)(6) generally applies to recoveries based on a tort claim rather than those based on breach of contract, a breach of contract claim may be nondischargeable under § 523(a)(6) if the breach is both in bad faith and "accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious injury." Coastal Industrial Partners, LLC v. Lawson (In re Lawson), 2015 WL 1291366, *4 (B.A.P. 9th Cir., March 20, 2015) (quoting Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1206 (9th Cir.2001)). Whether a debtor's breach of contract is tortious is determined under state law. Id.

In California, tortious breach of contract requires: "[c]onduct amounting to a breach of contract [that] ... also violates an independent duty arising from principles of tort law." Id.; see also Lockerby v. Sierra, 535 F.3d 1038, 1041 (9th Cir.2008) (conduct is "tortious if it constitutes a tort under state law."). California law further limits recovery for tortious breach of contract to situations where: "in addition to the breach of the covenant [of good faith and fair dealing] a defendant's conduct violates a fundamental public policy of the state." In re Jercich, 238 F.3d at 1206 (internal quotation marks omitted) (alteration in original).

Plaintiff's allegations under § 523(a)(6) are identical to the facts alleged in under § 523(a)(2)(A). In her Opposition, Plaintiff argues that Debtor's failure to perform under the inchoate Agreement and failure to disclose that CTVFS was to be a non-profit is sufficient for a

-8-

denial of discharge under § 523(a)(6), and cites to Ninth Circuit authority to support her position that the non-disclosure of a material fact in the face of a duty to disclose [establishes] the requisite reliance and causation for actual fraud under the bankruptcy code. See In re Apte, 96 F.3d 1319, 1323 (9th Cir. 1996); In re Begun, 136 B.R. 490, 495 (Bankr.S.D.Ohio, 1992). Both Apte and Begun are cases that analyze § 523(a)(2)(A), not § 523(a)(6). Indeed, Plaintiff cannot quite commit to which of Debtor's alleged actions (or inaction) are grounds for a § 523(a)(6) claim. As stated above, the Opposition focuses on Debtor's alleged failure to disclose the non-profit status of CTVFS, but the allegation in the SAC related to the § 523(a)(6) claim was Debtor's alleged failure to enter the Agreement.

Debtor has met his burden to produce evidence to show that there is an absence of a genuine issue of material fact. Plaintiff was required to go beyond the pleadings and identify facts that show a genuine issue for trial. It would appear that Plaintiff has a number of theories but has provided no evidence to support them. She also cites law on threats and harassment but provides no evidentiary support for this either. Plaintiff's Separate Statement in Opposition to Motion for Summary Judgment, 8:1-10:14. Here, where Plaintiff has not met her burden, Debtor is entitled to summary judgment on the § 523(a)(6) claim.

C.   § 727(a)(4)(A)

A request for denial of discharge under §727(a)(4) is brought as well. This section, in its entirety, states that a debtor may not be granted a discharge if:

> (4) the debtor knowingly and fraudulently, in or in connection with the case--
> (A) made a false oath or account;
> (B) presented or used a false claim;
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

11 U.S.C. §727(a)(4).

In order to bring a successful § 727(a)(4)(A) claim for false oath, the plaintiff must show: (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir. BAP 1999). A claim for denial of a

discharge under § 727 is construed liberally in favor of the discharge and strictly against a person objecting to the discharge. First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir.1986).

Thus, the Code reflects the overall twofold purpose of bankruptcy: 1) to secure the equitable distribution to the bankrupt's estate among his creditors and 2) to relieve the honest debtor from the weight of indebtedness and provide an opportunity for him to have a fresh start. In re Devers, 759 F.2d 751, 754 (9th Cir. 1985). The fundamental purpose of §727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations. Wills, 243 B.R. at 63.

    a.  *False oath*

Plaintiff alleged that Debtor made false oaths in his initial petition and schedules, as he did not list (1) her as a creditor; (2) income from SCFF or CTVFS; and (3) his interest in CTVFS. Plaintiff alleged that Debtor knowingly omitted these items from his schedules because he must have known that Plaintiff was a creditor because he listed the civil action filed by Plaintiff in the Los Angeles Superior Court and that he "should know what assets he owns or has any interest in…." SAC, 7:1-13. Debtor states that he did the best he could when he completed his schedules as a *pro se* debtor, and "inadvertently left off" Plaintiff as a listed creditor because he did not believe he owed her money. Truppa Decl., 9:12-17; Lewis Decl., Ex. 3, 8:8-20; 12:10-9. On April 28, 2015, after his initial § 341(a) meeting and after having receiving "additional advice," Debtor amended his Schedule F to include Plaintiff as a creditor, and listed her $40,000 claim as "contingent, unliquidated, and disputed." Truppa Decl., 9:12-17; Amended Schedules, bankr. ECF doc. no. 11. Debtor's explanation and evidence in support are uncontroverted by Plaintiff.

Plaintiff is correct that Debtor initially submitted schedules that contained omissions. The requisite false oath may involve either an affirmatively false statement or an omission from the debtor's schedules. Wills, 243 B.R. at 62. As explained below, such omissions were not made about a material fact, nor were they made with the requisite fraudulent intent

//
//
//
//

      b. *Materiality*

Materiality is broadly defined: "A false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." Wills, 243 B.R. at 62; *accord*, Weiner v. Perry, Settles & Lawson (In re Weiner), 208 B.R. 69, 72 (9th Cir. BAP 1997), *rev'd on other grounds*, 161 F.3d 1216 (9th Cir.1998); Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir.1984).

Plaintiff points to the fact that although Debtor later amended his schedules to include both her claim and his interest in Truppa Entertainment, he failed to include the film rights owned by Truppa Entertainment or the compensation he received for his "travel, meals, and lodging." Opposition, 11:14-18. The films in which Plaintiff alleges that SCFF and/or CTVFS have an interest are listed in *Defendant's First Set of Responses for Admissions to Plaintiff*, Lewis Decl., Ex. 2, 7:6-9:2. There is no evidence from Plaintiff that Debtor's initial omissions were anything other than inadvertent.

Debtor responded, admitting that while he has never taken any payment and/or salary from [SCFF/CTVFS], but that he had had SCFF/CTVFS cover "the most basic and lowest possible travel, lodging, and meal costs…." Lewis Decl., Ex. 3, 11:6-14. Debtor also explained why he believes that none of the films for which he and/or SCFF and/or CTVFS have any value, and that Truppa Entertainment does not have any interest in films with any value. Id. at 13:15-14:23. Plaintiff has not provided evidence that Debtor ever received an income or salary from SCFF or CTVFS, and there is no need to disclose minimal cost reimbursement.

Debtor correctly notes that "[Plaintiff] has not come forward with any evidence that [Debtor] owns any films." Plaintiff, for her part, merely cites to Ninth Circuit authority to support her position that Debtor cannot escape a § 727 claim merely by claiming the undisclosed assets are worthless. Opposition, 12:3-9. Regardless of their value, Plaintiff has provided no evidence that any films are actually owned by Defendant, rather than any other entity.

Here, Truppa Entertainment was listed in both the originally filed schedules and in the amended schedules. Lewis Decl., Ex. 1 and 4. Thus, whatever Truppa Entertainment owns was included in its initial disclosure. It is not necessary to list each individual asset owned by an

-11-

entity where the entity is disclosed and Debtor has no interest individually in the entity's assets. As stated above, the fundamental purpose of §727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations. Wills, 243 B.R. at 63. The information provided by Debtor was sufficient for this purpose; further information about properties owned by entities that are not Debtor is not material for the Trustee's inquiry.

Trustee was given the necessary information to conduct his diligent inquiry into Debtor's financial affairs, and creditors were provided with accurate information to conduct their inquiries, if such creditor was so inclined. Debtor responded appropriately to discovery propounded by Plaintiff, as Plaintiff was not required to bring a motion to compel. Clearly, Debtor did respond to Plaintiff's discovery requests. See Lewis Decl., Ex. 2 and 3. The discovery cut-off was July 1, 2016, so the time to obtain from Defendant any information that Plaintiff believed was relevant to her § 727 claim has run.

c. *Knowingly and fraudulently*

As used in Section 727(a)(4)(A), the term "knowing" means that the debtor had a present awareness that the statement was untrue, and "fraudulent" means that the debtor harbored an intent to deceive, such as an intent to hide assets or the true value of assets or to prevent discovery of transfers of property. See Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249 (4th Cir.1987). Inaccurate statements that are due to inadvertence, an honest mistake or carelessness do not, generally, warrant denial of discharge.

In the Ninth Circuit the fact of prompt correction of an inaccuracy or omission may be evidence probative of lack of fraudulent intent. Searles v. Riley (In re Searles), 317 B.R., 368, 377 (B.A.P. 9th Cir. 2012), citing Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 733 (9th Cir. BAP 1999), *aff'd.*, 5 Fed.Appx. 743 (9th Cir.2001). In In re Merena, 413 B.R. 792 (Bankr.D.MT, 2009), a debtor disclosed many items missing from her Schedules and SOFA to the Trustee at the § 341(a) meeting and yet did not amend her schedules to incorporate this information. Merena, 413 B.R. After reviewing the facts of the case, the Merena court found no evidence of fraudulent intent. Id. at 817.

The undisputed facts conclusively demonstrate that Debtor did not initially list Plaintiff's claim in his schedules. There is no evidence, however, that Debtor intended to hide assets or

-12-

deceive his creditors and Trustee. Debtor included Plaintiff's state court action against him in his initial Statement of Financial Affairs, so he clearly was not attempting to hide that Plaintiff had a claim against him; he just believed that he did not owe Plaintiff money and thus did not schedule her as a creditor. Lewis Decl., Ex. 1; Ex. 4, 8:13-15. Debtor then amended his schedules immediately after speaking with Trustee at the § 341(a) meeting and receiving "additional advice." Truppa Decl., 9:17. Plaintiff admitted at oral argument that she had an opportunity to take Debtor's deposition and that there was no other evidence of Debtor's knowing and fraudulent intent, other than any inferences that can be drawn from the fact that Debtor knew that Plaintiff was a creditor. Given that Debtor testified to his reasoning, was not hiding the dispute, and amended his schedules as soon as the mistake was drawn to his attention, the inference Plaintiff seeks is unreasonable.

Plaintiff also alleged that Debtor intentionally waited until after the § 341(a) meeting to add her as a creditor so that she would not have notice of the meeting and have a shorter time period to object to his discharge. Once again, there is no evidence that Debtor intended to prejudice Plaintiff's opportunity to file a nondischargeability action. Plaintiff did get notice of the bankruptcy filing in time to file a timely nondischargeability action. Debtor's delay in scheduling her claim caused no harm to Plaintiff and has not been shown to be material or intentional.

Plaintiff needed to come forward with some evidence of fraudulent intent, other than the brief delay in disclosure by a *pro se* party where all relevant details were provided so that creditors and Trustee has the basic information needed. There is nothing to contradict that the omissions and misstatements were unintentional mistakes caused by the *pro se* Debtor having completed his schedules without the requisite knowledge of what he was required to disclose.

//
//
//
//
//
//
//
//
//
//

-13-

Motion granted in full.  Judgment to be entered for Debtor under §§ 523(a)(2)(A); 523(a)(6); and § 727(a)(4)(A).  Defendant is ordered to submit a judgment and order.  The continued status conference, set for September 14, 2016 is vacated as unnecessary.

###

Date: August 12, 2016

Maureen A. Tighe
United States Bankruptcy Judge